KEVIN A. DARBY, ESQ. (NV SB#7670)
TRICIA M. DARBY, ESQ. (NV SB#7956)
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 322-1237
Facsimile: (775) 996-7290
E-mail: kad@darbylawpractice.com
        tricia@darbylawpractice.com

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE NO.:    BK-N-17-50081-BTB<br>Chapter 13 |
| PATRICIA G. OLSON, | |
| Debtor. | **REPLY IN SUPPORT OF MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363** |
| | Hearing Date:  May 18, 2017<br>Hearing Time: 3:00 p.m. |

_____/

Debtor, Patricia G. Olson, through her counsel of record, Tricia M. Darby, Esq., hereby submits this reply in support of her motion for the entry of an order approving the sale of **3443 Lake Tahoe Blvd., South Lake Tahoe, CA. 96150** ("3443 Lake Tahoe Blvd.") and **949 Bal Bijou Road, South Lake Tahoe, CA 96150** ("949 Bal Bijou Road") filed herein on April 5, 2017, as Docket No. 37  (the "Motion"), based on the following points and authorities.  A revised version of the proposed order granting the Motion is attached hereto as Exhibit 1.

## POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Motion and proposed sale are expressly supported by secured creditor U.S. Bank and the City of South Lake Tahoe.  *See Docket Nos. 66 & 67*.  In addition, the United States of America/ Internal Revenue Service and secured creditor the Kurtzman Family Trust have filed pleadings stating they do not oppose the sale or Motion, so long as their claims are paid in full.  *See Docket No. 64 & 75*.

1   The Debtor is informed there may be multiple qualified bidders for the properties who will be

2   appearing at the hearing on May 18, 2017.  In sum, the Debtor, creditors and multiple interested buyers

3   all support the Motion and sale.

4        The *only* opposition to the Motion was filed by Cody Bass.  Mr. Bass brashly admits that he

5   operates a business in direct violation of Federal criminal law and has appeared in this Federal Court in

6   furtherance of that criminal enterprise.[1]  Mr. Bass opposes the Motion and seeks to force the Debtor to

7   sell the subject properties to him pursuant to an expired purchase option agreement.  Mr. Bass further

8   seeks to force Mrs. Olson to carry financing for his purchase and, in turn, to finance his continued

9   operation of an illegal business in violation of Federal law.

10       Debtor Patricia Olson, who is 92-years old, seeks to pay all of her creditors in full by selling the

11  subject properties, and to free herself of Cody Bass and his illegal business.  As more fully set forth

12  below, this Court should grant the Motion to sell the subject properties free and clear of any interest

13  asserted by Cody Bass for at least the following reasons:

14       1)    Pursuant to 11 U.S.C. §363(f)(4), this Court has the power and authority to approve a sale

15  of 3443 Lake Tahoe Blvd and 949 Bal Bijou Road free and clear of any and all interests asserted by

16  Cody Bass because his claims are subject to a bona fide dispute.

17       2)    It is in the best interest of creditors for this Court to go forward with the scheduled hearing

18  and grant the Motion, as the proposed sale will pay all of the Debtor's creditors in full and is expressly

19  supported by creditors of this bankruptcy estate.

20       3)    There is no good reason to postpone the scheduled hearing on the Motion considering the

21  proposed sale is ripe to close and the late filed motion to dismiss by Cody Bass lacks merit.  As fully

22  discussed below, there is no cause to dismiss Mrs. Olson's case, which was filed in good faith on

23  January 31, 2017, to prevent a foreclosure sale by U.S. Bank, which was scheduled for February 1,

24

25

26

27  [1] Mrs. Olson questions whether Mr. Bass, who admittedly operates an illegal business in violation of
    Federal law, can even appear and be heard in this case, let alone seek this Court's relief in furtherance

28  of his criminal enterprise.

2017.[2]  As shown below, even if cause were to exist, this Court has broad discretionary power under §1307(c) to deny a request to dismiss where, as here, dismissal is not in the best interest of creditors or where the case is filed in good faith and the Debtor is in need of bankruptcy protection and relief.

4)      This case should not be dismissed upon the motion of Mr. Cody Bass.  The facts and circumstances of Mrs. Olson's case are soundly distinguishable from the case law cited by Mr. Bass. The reasoning and decision in In re Johnson, 532 B.R. 53 (Bankr. W.D. Mich. 2015) is far more applicable.  There, the court denied a motion to dismiss under §1307(c) on the condition the Debtor ceased using property of the estate for the sale and production of marijuana on a going forward basis.

5)      The proposed sale satisfies all relevant provisions of 11 U.S.C. §363, is the result of a proper exercise of business judgment, and is in the best interest of creditors of this estate.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Debtor.

1.      The Debtor, Patricia G. Olson is 92-years old and legally blind.  She lives in an assisted living facility in Sparks, Nevada.

2.      Mrs. Olson is the legal and record title owner of 949 Bal Bijou Road and 3443 Lake Tahoe Blvd.

3.      3443 Lake Tahoe Blvd. is encumbered by a first priority deed of trust securing a loan owed by the Debtor to U.S. Bank with an outstanding balance of approximately $765,000.00 (the "U.S. Bank Loan").

4.      On August 15, 2016, U.S. Bank recorded a Notice of Default in the Official Record of the El Dorado County Recorder related to the U.S. Bank Loan.

5.      On December 9, 2016, U.S. Bank recorded a Notice of Sale in the Official Record of the El Dorado County Recorder, which set an initial foreclosure sale date of January 17, 2017.

6.      U.S. Bank agreed to extend the foreclosure sale to February 1, 2017, but otherwise

---

[2] It is clear from his Opposition that Mr. Bass does not understand that had Mrs. Olson not filed this case on January 31, 2017, a foreclosure sale would have occurred on February 1, 2017.  It is equally apparent that Mr. Bass does not understand that if this case is dismissed, the foreclosure sale will proceed post haste.  Mrs. Olson's interest in the subject properties, as well as any purported interest asserted by Mr. Bass, would be eliminated upon such a foreclosure sale.

indicated that it intended to proceed with a foreclosure sale on that date.

7.     On January 31, 2017, the day before the U.S. Bank foreclosure, the Debtor filed this case, thereby triggering the provisions of 11 U.S.C. §362 and staying U.S. Bank's foreclosure efforts.

8.     Had this case not been filed on January 31st, U.S. Bank would have foreclosed on 3443 Lake Tahoe Blvd. the next day on February 1st, 2017.  U.S. Bank's foreclosure would have eliminated all subordinate claims in 3443 Lake Tahoe Blvd., including the interests of the Debtor and any purported interest in the property asserted by Mr. Cody Bass.

9.     Both 3443 Lake Tahoe Blvd and 949 Bal Bijou Road are encumbered by a Federal Income Tax lien in favor of the IRS in the amount of $41,485.96.

**B.  The Expired Purchase Option.**

10.     Prior to the filing of this case, Mrs. Olson's son, Patrick Olson, acted and served as Mrs. Olson's attorney-in-fact.  In doing so, Patrick Olson managed most of Mrs. Olson's financial affairs, which included the management of 949 Bal Bijou Road and 3443 Lake Tahoe Blvd.  Patrick Olson's duties included obtaining leases for the properties, collecting rents and paying all expenses, such as the secured mortgage payment to U.S. Bank, real property taxes and insurance premiums.

11.     In 2012, Patrick Olson, through Olson Bijou Center L.P. (Debtor's predecessor in interest), leased space at 3443 Lake Tahoe Blvd. to Cody Bass.

12.     There is no signed lease agreement between Mr. Bass and the Debtor or Debtor's predecessor in interest.  However, the terms of the agreement reached between Patrick Olson and Cody Bass are accurately set forth in that certain Retail Space Lease Agreement attached to the *Declaration of Patricia G. Olson* (Dkt. No. 40) as Exhibit 1.

13.     Patrick Olson also entered into negotiations with Cody Bass, which on or about February 4, 2016, resulted in an Option Agreement, pursuant to which Mr. Bass acquired an option to purchase 949 Bal Bijou Road and 3443 Lake Tahoe Blvd. for a total purchase price of $4,200,000 (the "Bass Option Agreement").  The Bass Option Agreement provides for seller carried financing.  A copy of the Bass Option Agreement is attached to the *Declaration of Patricia Olson* (Dkt. No. 40) as Exhibit 3.

14.     The Bass Option Agreement was entered into by and between: (1) Olson Bijou Center L.P.; (2) Patricia G. Olson; and (3) Cody Bass.

15.   Pursuant to section 4 of the Bass Option Agreement, Mr. Bass's right to purchase the properties ***expired at midnight on March 3, 2016***, after Mr. Bass failed to fully and completely exercise the option and close escrow on his purchase of the subject properties.

**C.   Mr. Bass's Failed Attempt to Extend of the Expired Purchase Option Through "Elder Abuse" Laced Tactics.**

16.   On March 2, 2016, the day before the Bass Option Agreement was set to expire, Andrew R. Cohen, Esq., as legal counsel for Mr. Bass, contacted Michael G. Millward, Esq., Counsel for the Debtor, seeking an extension of the Bass Option Agreement to April 4, 2016.

17.   On March 3, 2016, the day the Bass Option Agreement expired, Mr. Cohen and Mr. Millward spoke on the telephone about a potential extension and a proposed extension agreement drafted by Mr. Cohen.  Mr. Millward informed Mr. Cohen that proposed draft was not acceptable and would need to be revised.

18.   Immediately after he spoke to Mr. Cohen on March 3, 2016, Mr. Millward called his Client, the Debtor, only to learn that Mr. Bass was at her assisted living facility at that very moment asking Mrs. Olson to sign papers.  Mr. Millward advised Mrs. Olson to not sign anything being presented to her by Mr. Bass.

19.   Mrs. Olson does not recall signing anything with Mr. Bass on March 3, 2016.

20.   On April 1, 2016, Mr. Cohen, on behalf of Mr. Bass, sent an email to Mr. Millward, on behalf of Mrs. Olson, in which Mr. Cohen purported to exercise the option.

21.   Mr. Bass's attempt to exercise the option was based on a first amendment to the Bass Option Agreement. The first amendment was never signed by Olson Bijou Center L.P. and lacked any consideration, thereby rendering it unenforceable.  A copy of the unenforceable first amendment is attached to the Declaration of Michael Millward, Esq. as Exhibit 1.

22.   On April 5, 2016, Mr. Millward sent a letter to Mr. Cohen in which he objected to Mr. Bass's tactics of circumventing Mrs. Olson's legal counsel to manipulate Mrs. Olson into signing the First Amendment.   Mr. Millward further explained that Mrs. Olson did not understand what, if anything, she signed.  Mr. Millward reiterated that the option had expired on March 3, 2016, and that the purported first amendment extending that deadline was never fully executed, lacked consideration,

was the result of improper influence and pressure on an elderly person and was not enforceable.  A copy of Mr. Millward's April 5, 2016, letter is attached to his Declaration as Exhibit 2

**D. The State Court Litigation.**

23.   On May 12, 2016, Mr. Bass filed a lawsuit against Olson Bijou Center, L.P., Patricia G. Olson, and Patrick Olson for breach of contract, specific performance, breach of covenant of good faith and fair dealing, and intentional interference with contractual relations.

24.   On September 20, 2016, Olson Bijou Center, L.P., Patricia G. Olson, and Patrick Olson filed counterclaims against Cody Bass for elder abuse, intentional interference with contractual relations, fraud and exemplary damages.

25.   The State Court case was still pending at the time this Case was filed.

**E. Mr. Bass's Motion To Dismiss.**

26.   On April 28, 2017, Mr. Bass filed a motion to dismiss this case on the grounds that he (Mr. Bass) operates a criminal enterprise and the Debtor leases space to him (the "Motion To Dismiss").  *See Docket No. 58.*

**III.  LEGAL ARGUMENT**

**A. This Court Has The Authority To Approve The Proposed Sale Free and Clear of Any Interest Claimed By Cody Bass Pursuant To 11 U.S.C. §363(f)(4) and Should Do So By Granting The Motion.**

Pursuant to 11 U.S.C. §363(f), the Debtor may sell property of her bankruptcy estate free and clear of *any interest* in such property if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents;  (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) **such interest is in bona fide dispute**; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Particularly relevant in this case is §363(f)(4) because all interests asserted by Mr. Bass are the subject of a bona fide dispute.  "The purpose of §363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated."  In re Clark, 266 B.R. 163,

171 (9th Cir. B.A.P. 2001), *citing* 3 Lawrence P. King, *Collier on Bankruptcy,* ¶ 363.06 (15th ed. Rev. 1998).   Although the phrase "bona fide dispute" is not defined in the Bankruptcy Code, courts have held that it "exists when there is an objective basis for either a factual or legal dispute as to the validity of an interest in property".   In re Durango Georgia Paper Co., 336 B.R. 594, 597 (Bankr. S.D. Ga. 2005); *Citing* In re Robotic Vision Sys., Inc.; and In re Octogon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill 1991).   In In re Pierce, 384 B.R. 477 (Bankr. S.D. Ohio 2008), the court observed:

> Courts have held that a bona fide dispute exists when... there is an objective basis for either a factual or legal dispute as to the validity of the debt.   In re Gaylord Grain L.L.C., 306 B.R. 624, 627-28 (8th Cir. BAP 2004) (citations omitted).   Nothing in section 363 requires a trustee to commence an adversary prior to sale, where there is an established bona fide dispute, and no such requirement can be found in Bankruptcy Rule 6004 that governs sales.

In re Pierce, 384 B.R. at 482.   In In re Octagon Roofing, 123 B.R. 583 (Bankr. N.D. Ill. 1991), the court considered the meaning of "bona fide dispute." stating:

> The term "bona fide dispute" is not defined in §363(f)(4) of the Code. However, the term "bona fide dispute" is also used in the Bankruptcy Code at 11 U.S.C. §303 in connection with the nature of the claims asserted as basis for an involuntary Chapter 7 petition. To determine in this Circuit what constitutes a bona fide dispute, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." In re Busick, 831 F.2d 745, 750 (7th Cir. 1987). Under this standard, a court need not determine the probable outcome of the dispute, but merely whether one exists.   Id   No authority has been cited showing that "bona fide dispute" has any different meaning when used in 11 U.S.C. § 363(f)(4).

In re Octagon Roofing, 123 B.R. at 590.

As noted in Octagon Roofing, §363(f)(4) does not contemplate or require that the court resolve or determine any dispute before a sale hearing, but rather requires only an examination of whether there is an objective basis for either a factual or legal dispute to exist.   In fact, courts have held that the allegations in an opposition to a motion to sell can be sufficient to create a bona fide dispute for the purposes of §363(f).   *See e.g.,* In re Oneida Lake Dev., 114 B.R. 353, 357 (Bankr. N.D.N.Y. 1990).

In this case, there is a bona fide dispute over whether Cody Bass has an interest in 3443 Lake Tahoe Blvd. based on either the Bass Option Agreement or his lease agreement.   As more fully detailed above, the Debtor maintains that the Bass Option Agreement expired pursuant to its terms on

March 3, 2016, the deadline for Mr. Bass to execute the option and complete the purchase. This position is evidenced by the fact Mr. Bass did not exercise the subject purchase option by March 3, 2016, and the lack of any enforceable or fully executed document extending that deadline. Mr. Bass relies on an unenforceable amendment extending the March 3, 2016 deadline, which was never fully executed by the parties, lacked consideration and was the result of undue influence and elder abuse tactics. These facts objectively create bona fide factual and legal disputes over the validity of Mr. Bass's asserted interest under the Bass Option Agreement.

There is also a bona fide dispute over whether Mr. Bass maintains any rights to occupy 3443 Lake Tahoe Blvd. as a tenant. The Debtor maintains any lease agreement with Cody Bass has been or can be terminated for cause because Mr. Bass has materially breached the Bass Lease Agreement by: (1) failing to pay full required monthly rent; and (2) operating a medical marijuana dispensary at the leased premises without a license and in violation of the State and Federal Law. Both of these breaches amount to events of default and constitute "material breaches" of the Bass Lease Agreement. Mr. Bass apparently maintains he is excused from performance based on the pending dispute over the expired Bass Option Agreement. These facts also objectively create a bona fide factual and legal dispute over the validity of Mr. Bass's rights to occupy 3443 Lake Tahoe Blvd. as a tenant.

Because the validity of any and all interests asserted by Mr. Bass's in 3443 Lake Tahoe Blvd. are the subject to bona fide disputes, 11 U.S.C. §363(f)(4) empowers this Court to authorize the Debtor's sale of that property free and clear of "**any interest**" asserted by Mr. Bass and to terminate all of his rights in the property, including possessory rights as a tenant. Precision Industries, Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 545 (7th Cir. 2003) (Concluding that the term "any interest" as used in §363(f) is sufficiently broad to include possessory leasehold interests.). The breadth of "any interest" as used in §363(f) is virtually unlimited and includes **any** "legal share in something; all or part of a legal or equitable claim or right in property." Precision Industries, 327 F.3d at 545, *Quoting Black's Law Dictionary*, 816 (7th Ed. 1999). As explained by the Seventh Circuit, Congress authorized the sale of estate property free and clear of "*any* interest" **without exception**. Id. Thus, §363 allows for the termination of "any interest" in estate property, including interests asserted by Mr. Bass under the expired Bass Option Agreement and any lease agreement.

**B. It Is In The Best Interest Of Creditors, The Estate And The Debtor That This Court Proceed With Hearing On The Motion And Approve The Sale On May 18, 2017.**

The creditors of this estate have spoken and support the Motion and proposed sale.  As noted above, U.S. Bank, the City of South Lake Tahoe, the Kurtzman Family Trust and the Internal Revenue Service have all expressed varying degrees of support for the Motion.  U.S. Bank is the largest creditor of this estate and was the primary party impacted and delayed by the filing of this Case.  It was U.S. Bank that had a foreclosure sale scheduled for February 1, 2017, which necessitated the filing of this Case.  Now, U.S. Bank expressly supports the Motion and the proposed sale.

It cannot be reasonably disputed that the proposed sale is in the best interest of the creditors of this estate.  Once approved by this Court, the sale will close quickly and pay all creditors of this estate in full.  The fact the proposed sale will pay all creditors of this estate in full, combined with the support of the Motion expressed by creditors in the record of this case, leaves no doubt that granting the Motion is in the best interest of creditors.

**C. This Court Should Proceed With The Hearing On The Motion To Sell On May 18, 2017, Because Cody Bass's Motion To Dismiss Should Be Stricken and Lacks Merit.**

The Motion and proposed sale should go forward as scheduled and not be delayed pending a hearing on Mr. Bass's Motion To Dismiss.  First, the Motion To Dismiss is a blatant delay tactic.  If Cody Bass truly believed his motion had merit, he could have sought to have it heard on shortened time before or at the same time as the Debtor's Motion.   In fact, Mr. Bass's motion could have been filed in time for the hearing to be set concurrently with the Debtor's Motion without resorting to the shortened time rule.  Instead of promptly proceeding with his motion or a request to shorten time, Mr. Bass waited to file his motion and conveniently set the hearing *after* the noticed hearing date for the Debtor's Motion.  Mr. Bass now attempts to use his hearing date to delay the hearing on the Debtor's Motion.  Mr. Bass's tactics should not be tolerated by this Court.

Mr. Bass's Motion to Dismiss is also without merit and may be ripe for being summarily denied.  The nature and substance of Mr. Bass's objection can be considered nothing less than an outrageous display of chutzpah.   In a nutshell, Mr. Bass comes to this Federal Court and announces he operates a marijuana dispensary in violation of Federal law.  Mr. Bass's operation is not even legal

1  under California state law because he lacks the license required by the City of South Lake Tahoe.  After

2  announcing he operates an illegal business, Mr.  Bass then attempts to use his illegal activity as grounds

3  to deny Mrs. Olson relief under the Bankruptcy Code.

4       Debtor submits it is Mr. Bass who may lack standing for relief in this Court.  Mr. Bass's

5  unabashed admissions in his opposition to Debtor's motion and his Motion to Dismiss, combined with

6  Mr. Bass's desire to use this Court to further his operations in violation of Federal law, provides ample

7  grounds for this Court to refuse to hear Mr. Bass.  Debtor submits that it may be proper to strike or

8  summarily deny Mr. Bass's opposition and refuse to hear him in this Federal court.

9       In the event the Court reaches the merits of Mr. Bass's Motion to Dismiss, it will see Mr. Bass's

10  position is based almost entirely on the case of In re Rent-Rite Super Kegs W., Ltd., 484 B.R. 799

11  (Bankr. D. Co. 2012).  However, the Rent-Rite case is soundly distinguishable from Mrs. Olson's case

12  on both legal and factual grounds.  First, Rent-Rite was a *Chapter 11* case and involved a dismissal

13  sought pursuant to *11 U.S.C. §1112(b)*.  Section 1112(b) provides that the Court **"shall"** dismiss or

14  convert a Chapter 11 case upon the showing of cause.  Contrarily, this is a case under *Chapter 13* and

15  the relevant provision to seek dismissal is *11 U.S.C. §1307(c)*.   Section 1307(c) states that upon a

16  showing of cause the Court **"may"** convert or dismiss a Chapter 13 case.  The difference between the

17  use of **"shall"** in §1112(b) and **"may"** in §1307(c) is meaningful.  According to the B.A.P., "may" is a

18  permissive word, not a word of command.  In In re Green, 64 B.R. 530, 530-531 (9th Cir. B.A.P. 1986).

19  In Green, the B.A.P. analyzed the language of §1307(c), noted the difference between "shall" and

20  "may", and concluded that "the decision to dismiss a Chapter 13 is a *discretionary decision* of the trial

21  court."  In re Green, 64 B.R. at 531.

22       It is also important to point out that the Rent-Rite Court did not hold that the debtor in that case

23  could not obtain relief under the Bankruptcy Code.  In fact, that court did not grant the motion to

24  dismiss under §1112, and instead converted the case to a Chapter 7.  In re Rent Rite, 484 B.R. at 811.

25  At most, Rent-Rite stands for the proposition that cause to convert a Chapter 11 case under §1112(b)

26  exists upon proof that the debtor is operating a business in violation Federal law and seeks to continue

27  to do so to fund his plan.  Again, as this is a Chapter 13 case, §1112(b) does not apply and the legal

28  conclusions in Rent-Rite have no application in the case at bar.

In addition to being legally distinguishable from this case, the Rent-Rite case is also factually distinguishable from Mrs. Olson's case.  Rent-Rite involved a landlord debtor receiving rents from a marijuana business.  The Rent-Rite debtor freely admitted that he intended to continue collecting such rents and use them to fund his Chapter 11 plan of reorganization.  The Rent-Rite debtor took the position that Colorado state law legalizing the sale of marijuana trumped Federal criminal law.  The secured creditor in Rent-Rite was neither comfortable with, nor agreeable to, a marijuana business operating in its collateral and brought the motion to dismiss or convert under §1112(b).

In this case, the Debtor seeks to end any involvement with Mr. Bass and his illegal business. Mrs. Olson does not seek to use money from Mr. Bass to fund her Chapter 13 Plan.  Mrs. Olson does not want to sell her property to Mr. Bass and does not want to finance his purchase of 3343 Lake Tahoe Blvd.  Mrs. Olson seeks to terminate any dealings with Mr. Bass and to sell the subject property to fund her plan and pay her creditors in full.  For all of these reasons, this case is both legally and factually distinguishable from Rent-Rite.

A more applicable case to guide this Court is found in In re Johnson, 532 B.R. 53 (Bankr. W.D. Mich. 2015).  Johnson is a *Chapter 13* case where the debtor was using estate property in connection with his marijuana growing business.  In re Johnson, 532 B.R. at 55 & 58.  The Debtor filed the case to prevent the termination of his utility services and to avoid repossession of his truck.  Id. at 58.  A secured creditor filed a motion to dismiss the case under *§1307(c)* based on the debtor's growing business.  Addressing the §1307(c) motion, the Johnson Court found it notable that the debtor had a good faith reason to file his case and was in dire need of bankruptcy relief.  Id.  "To balance the court's (and Debtor's) obligations under federal law, including federal criminal law, the Debtor's legitimate need for relief under Chapter 13…" the Johnson Court refused to dismiss the debtor's case.  Instead, the court allowed the debtor to remain in Chapter 13, but enjoined him from conducting his marijuana business while his bankruptcy case was pending.  Id.  The Court in Johnson gave the debtor a straight forward choice: (1) quit the marijuana business and enjoy relief under the Bankruptcy Code; or (2) continue the marijuana business and the case will be dismissed.  Id.

Just as the debtor in Johnson, Mrs. Olson had a good faith reason to file bankruptcy.  As stated above, Mrs. Olson was scheduled to lose 3443 Lake Tahoe Blvd. to a foreclosure sale on February 1,

2017.  She filed this case on the eve of foreclosure to stop it and to give her the opportunity sell the property.  Had this case not been filed, many of Mrs. Olson's creditors would have been left unpaid and she would have lost substantial equity value in 3443 Lake Tahoe Blvd.  The filing of this case allows Mrs. Olson to stay the foreclosure sale, preserve her equity in property and pay all of her creditors in full.  Thus, just as in <u>Johnson</u>, this case was filed in good faith.

Further, Mrs. Olson has no intention or desire to be involved with Mr. Bass on a going forward basis.  To the contrary, by virtue of the Motion, Mrs. Olson seeks to completely and forever terminate any relationship with Mr. Bass.  Under these circumstances, the wisdom displayed by the court in <u>Johnson</u> should dictate the outcome here.  Because the Debtor has a good faith basis for seeking bankruptcy protection and will not derive future income from potentially illegal businesses, Mr. Bass's request for this case to be dismissed under §1307(c) should be denied.

Finally, this Court's broad discretionary power under §1307(c) includes the power to deny a request to dismiss where, as here, dismissal is not in the best interest of creditors.  For all of the reasons discussed above as to why the Motion and proposed sale are in the best interest of creditors, dismissal of this case is not in creditor's best interests.  A dismissal would result in U.S. Bank being the only creditor paid upon foreclosure.  Contrarily, allowing this case to move forward allows all creditors to be paid in full.  It is beyond reasonable dispute that dismissal of this case is not in the best interest of creditors.

For all of these reasons, the Court should ultimately deny Mr. Bass's Motion To Dismiss.

**D.  <u>The Proposed Sale Is The Result Of A Proper Exercise Of Business Judgment.</u>**

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Pursuant to 11 U.S.C. §1303, a Chapter 13 debtor enjoys all powers of a trustee under 11 U.S.C. §363.

Courts have uniformly held that approval of a proposed sale of a debtor's assets outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that sound business reasons justify the transaction.  <u>See</u> <u>In re Lionel Corp.</u>, 722 F.2d 1063-1069-71 (2d Cir. 1983); <u>In re Walter</u>, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).  Once the Debtor articulates a valid business justification, a presumption arises that "in making a business decision the

1  directors of a corporation acted on an informed basis, in good faith and in the honest belief that the

2  action was in the best interests of the company." In re. Integrated Resources, Inc., 147 B.R. 650, 656

3  (S.D.N.Y. 1992).  The Debtor's business judgment "should be approved by the court unless it is shown

4  to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on

5  bad faith, or whim or caprice." In re Aeravox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001).

6      In this case, there are multiple business justifications for the Debtor to sell the subject

7  properties.  First, had this case not been filed and a sale not brought forward, the 3443 Lake Tahoe

8  Blvd. would have been lost to a U.S. Bank foreclosure.  Debtor deemed it to be a good business

9  decision to file the bankruptcy case to stop the foreclosure and sell the property to pay off her creditors.

10  Second, the Debtor is 92-years old and has also determined she will be better server with liquid assets

11  (i.e. cash) than owning and managing multi-tenant commercial buildings an hour away from where she

12  lives.  Further, Mr. Hassett's offer is the highest all cash purchase offer for the properties.

13      Mr. Bass's argument regarding the lack of evidence of value is a red herring.  First, the only

14  party impacted by a greater or lesser selling price is the Debtor.  It is beyond dispute that the subject

15  properties are of a sufficient value to pay all creditors of this estate in full.   Thus, any higher or lower

16  sales price only impact the net return on Debtor's equity.  The sale price certainly does not impact Mr.

17  Bass in any manner and he lacks standing object to price.  Second, Mr. Bass ignores case law

18  recognizing that Mrs. Olson, as owner of the subject real property, is qualified to give her opinion of

19  value, which is admissible to establish value.  *See, e.g.,* Kestenbaum v. Falstaff Brewing Corp., 514

20  F2d 690 (5th Cir. 1975); Justice v. Pennzoil Co., 598 F2d 1339 (4th Cir. 1979).  In any event, the

21  ultimate value of the subject properties will be established through the sale process in the Bankruptcy

22  Court, which provides for over bids to test value.

23      As shown above and in the Motion, the proposed sale satisfies all requirements of 11 U.S.C.

24  §363(b)&(f)(4), the Motion should be granted.

25  **IV.   CONCLUSION**

26      Based on the foregoing, the Debtor respectfully requests this Court approve the sale of the

27  Subject Properties to Mr. Hassett, according to the terms of the Purchase Agreements attached to the

28  Declaration of Patricia G. Olson as Exhibits 1 and 2, but subject to over bid at the hearing on the

Motion. This Court should further approve sale as being free and clear of all liens, claims or encumbrances, including any and all such interest asserted by Cody Bass, but subject to all tenant leases (except any lease with Mr. Bass). Debtor further requests this Court waive the 14-day stay on or before the order granting this Motion under Fed. R. Bankr. P. 6004(h).

DATED this 11th day of May, 2017.

DARBY LAW PRACTICE, LTD.

*/s/ Tricia M. Darby*

By:_____
TRICIA M. DARBY, ESQ.
4777 Caughlin Parkway
Reno, Nevada 89519
Attorney for Debtor

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 1**
**PROPOSED ORDER**

**EXHIBIT 1**
**PROPOSED ORDER**

KEVIN A. DARBY, ESQ. NV SB#7670
TRICIA M. DARBY, ESQ. NV SB#7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 322-1237
Facsimile: (775) 996-7290
E-mail: kad@darbylawpractice.com

Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

PATRICIA G. OLSON,

                    Debtor.

_____/

CASE NO.:      BK-N-17-50081-BTB
Chapter 13

**ORDER GRANTING MOTION TO SELL
ASSETS FREE AND CLEAR OF LIENS
PURSUANT TO 11 U.S.C. §363**

Hearing Date:  May 18, 2017
Hearing Time:  3:00 p.m.

Upon the *Motion To Sell Assets Free and Clear of Liens Pursuant To 11 U.S.C. §363*, filed March 30, 2017 (the "Motion") by Debtor Patricia G. Olson (the "Debtor"), in which Debtor seeks an order under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004 and 9014 approving the sale of certain of the Debtor's assets free and clear of liens, claims, and encumbrances to Robert J. Hassett ("Mr. Hassett"); and the Motion having come before this Court on a duly noticed hearing, and having considered all objections and arguments for and against the Motion, and good cause appearing; and finding:

1.      Debtor's Motion seeks an order approving the sale of certain assets owned by the Debtor

to Mr. Hassett, pursuant to the terms of the Purchase Agreements attached to the Declaration of Patricia G. Olson as Exhibits 1 and 2, free and clear of all liens, claims and encumbrances, for cash in the amount of **$3,000,000.00,** to be paid within sixty (60) days from date of the entry of this order.  The assets being sold to Mr. Hassett are identified in detail in the Purchase Agreement and include **949 Bal Bijou Road, South Lake Tahoe, CA 96150** ("949 Bal Bijou Road") and **3443 Lake Tahoe Blvd., South Lake Tahoe, CA. 96150** ("3443 Lake Tahoe Blvd.") (949 Bal Bijou Road and 3443 Lake Tahoe Blvd. shall collectively be referred to as the ("Subject Properties").

2. Mr. Hassett is not an insider of the Debtor or otherwise related or affiliated with the Debtor in any way.

3. Mr. Hassett is acquiring the Subject Properties "as is", without warranties or representations, except as provided in the Purchase Agreement.

4. The sale of Subject Properties to Mr. Hassett  is free and clear of any lien, claim or encumbrance pursuant to 11 U.S.C. §363(f).

5. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities

6. The Debtor is the sole and lawful owner of Subject Properties to be sold to Mr. Hassett.

7. No qualifying or competing bids were submitted.

8. The offer of Mr. Hassett to purchase the Subject Properties is the highest and best offer received by the Debtor.  The purchase price to be paid by Mr. Hassett is fair and reasonable market value for the Subject Properties.

9. Mr. Hassett is a good faith purchaser with respect to Subject Properties, within the meaning of section 363(m) of the Bankruptcy Code. The sale to Mr. Hassett was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and Mr. Hassett therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the assets. Neither the Debtor nor Mr. Hassett have engaged in any conduct that would cause or permit the sale to be voided under Section 363(n) of the Bankruptcy Code.

10. Mr. Hassett shall not assume or become liable for any pre-petition liens, claims, interests and/or encumbrances relating to Subject Properties by the Debtor.  Any valid and enforceable liens,

claims, interests and/or encumbrances shall attach to the proceeds of the sale with the same priority, validity, and enforceability as they had immediately before the closing of the sale.

11.    The Debtor has articulated sound business reasons for selling the Subject Properties as set forth in the Motion, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver and consummate the sale with Mr. Hassett and consummate the transactions contemplated by the Motion and as set forth in this Order.

12.    The terms and conditions of the sale, including the total consideration to be realized by the Debtor, are fair and reasonable, and the transactions contemplated by the Motion, as approved by this Order, are in the best interests of the Debtor, its creditors and the estate.

13.    A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. The Debtor may sell, transfer and assign Subject Properties free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code.  The transfer of the Subject Properties to Mr. Hassett is expressly and specifically free and clear of any lien, claim, interest or encumbrance asserted by Cody Bass or any of his affiliates or affiliated entities.

14.    The transfer of Subject Properties to Mr. Hassett is or will be a legal, valid and effective transfer of Subject Properties, and will vest Mr. Hassett with all right, title and interest in and to Subject Properties, free and clear of all liens, claims, interests and/or encumbrances.

15.    The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of Subject Properties have been satisfied.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**A. SALE OF ASSETS APPROVED; TRANSACTIONS AUTHORIZED.**

16.    The Motion is GRANTED.

17.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied.

18.    The Motion, the underlying purchase agreements and the transactions contemplated thereby are approved pursuant to Section 363(b) and (f) as modified by this Order, and the Debtor is

hereby authorized and empowered to perform their obligations under the Purchase Agreement and to act as necessary to effectuate the sale without further corporate authorization or Order of this Court.

**B. TRANSFER OF THE ASSETS TO MR. HASSETT.**

19.     The transfer of Subject Properties to Mr. Hassett constitutes a legal, valid and effective transfer and shall vest Mr. Hassett with all right, title and interest of the Debtor in and to Subject Properties free and clear of all claims, liens and encumbrances.

20.     The following claims shall be paid directly out of escrow from the proceeds of sale:

| | |
|---|---|
| US Bank Lien: | $ 775,000+/- [3] |
| Wells Fargo Lien: | $  84,500+/- |
| Kurtzman Family Trust Lien: | $  46,500+/- |
| Robert Hassett Lien: | $  75,000 |
| IRS Tax Lien: | $  44,000+/- |
| Unpaid Property Taxes: | $  55,000+/- |
| Chapter 13 Trustee William Van Meter: [4] | $ 150,000 |
| Darby Law Trust Account: [5] | $ 250,000 |
| Estimated Sellers Costs of Sale: | $   15,000+/- |
| Estimated Total Disbursements from Escrow: | *$1,495,000+/-* |

21.     All remaining sales proceeds, estimated to total +/-$1,505,000, shall be paid directly from the proceeds of sale to Patricia G. Olson.

22.     This Order shall be binding upon, and shall inure to the benefit of, the Debtor and Mr. Hassett and their respective successors and assigns, including, without limitation, any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 13.

23.     The provisions of this Order authorizing the sale of Subject Properties free and clear of liens, claims and encumbrances (with such liens, claims and encumbrances to attach to the proceeds of the sale of the Assets as provided in this Order) shall be self-executing, and neither the Debtor, Mr. Hassett nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement

---

[3]  The symbol "+/-" (the plus or minus symbol) shall mean the payoff is an estimated amount.  The full amount of these claims shall be determined and paid in full at the close of escrow.

[4]  The payment of $150,000 is made to Mr. Van Meter to fully pay all claims in Mrs. Olson's Chapter 13 case, including administrative claims.

[5]  The payment of $250,000 is made to the Darby Law Practice Trust Account to be held and used exclusively to pay the capital gains taxes resulting from the sale of the Subject Properties

1  the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse

2  such parties from performing any and all of their respective obligations under this Order. Without in

3  any way limiting the foregoing, Mr. Hassett is empowered to execute and file releases, termination

4  statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or

5  implement the provisions hereof with respect to such sale.

6      24.    The sale approved by this Order shall be expressly free and clear of any interest

7  whatsoever claimed by Mr. Cody Bass or his affiliates.  Any interest claimed by Mr. Bass in 3443 Lake

8  Tahoe Blvd. shall be terminated upon entry of this Order, including any tenancy under any purported

9  lease agreement and any purported right to purchase said property.  Any memorandum or copy of the

10  Bass Option Agreement recorded in the official real property records of El Dorado County, California,

11  shall be released by entry of this Order.  Mr. Bass and his affiliates shall immediately vacate and

12  turnover 3443 Lake Tahoe Blvd. without further Court order. Failure to do so may constitute contempt

13  of this Court and will entitle the Debtor to immediately enforce any state law eviction rights.

14          **C. GOOD FAITH PURCHASE.**

15      25.    The purchase of Subject Properties by Mr. Hassett is a purchase in good faith for fair

16  value within the meaning of section 363(m) of the Bankruptcy Code, and Mr. Hassett is entitled to all

17  of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

18      26.    The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of

19  the Bankruptcy Code.

20      27.    The sale approved by this order shall be free and clear of all liens, claims and

21  encumbrances, with the exception of certain tenant leases.  Specifically, the sale shall be subject to all

22  tenant leases, except the lease with Mr. Cody Bass.  The sale shall be expressly free and clear of Mr.

23  Bass's lease agreement and any and all other interests in the Subject Properties asserted by Mr. Bass.

24      28.    Following the closing date, except for persons entitled to enforce assumed liabilities and

25  permitted liens, all persons (including, but not limited to, the Debtor and/or their respective successors

26  (including any trustee), creditors, investors, current and former employees and shareholders,

27  administrative agencies, governmental units, secretaries of state, federal, state, and local officials,

28  including those maintaining any authority relating to any environmental, health and safety laws, and the

successors and assigns of each of the foregoing) holding interests in the Subject Properties or against the Debtor in respect of Subject Properties of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever against Mr. Hassett or any affiliate of Mr. Hassett or any of their respective property successors and assigns, or Subject Properties, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtor that are not Subject Properties.

29.     No Person shall assert, and Mr. Hassett and Subject Properties shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of Mr. Hassett or the Debtor, or any obligation of any other party, under or with respect to, Subject Properties, with respect to any act or omission that occurred prior to the closing or with respect to any other agreement or any obligation of Debtor that is not an expressly assumed liability.

30.     Following the closing of the sale to Mr. Hassett, no holder of any Interest shall interfere with Mr. Hassett's title to, or use and enjoyment of, Subject Properties based on, or related to, any such interest, or based on any actions the Debtor may take in her Chapter 13 Case.

**D. ADDITIONAL DECREES.**

31.     The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

32.     As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry. Notwithstanding Bankruptcy Rules 6004(h), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

33.     The provisions of this Order are nonseverable and mutually dependent.

34.     Nothing contained in any plan confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the terms of this Order.

35.     This Order shall be binding upon and inure to the benefit of the Debtor, Mr. Hassett and

each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

36.    This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Motion and to resolve any dispute concerning this Order, the Motion, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Motion and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Subject Properties free and clear of all liens, encumbrances, security interests and claims of any kinds and nature whatsoever.

37.    The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

38.    Entry of this Order is in the best interests of the Debtor, the Debtor's estate, its creditors, and other parties in interest.

IT IS SO ORDERED.

SUBMITTED BY :

DARBY LAW PRACTICE, LTD.

        */s/ Tricia M. Darby*
By:_____
        TRICIA M. DARBY, ESQ.
        4777 Caughlin Parkway
        Reno, Nevada 89519
        Attorney for Debtor

                                    # # #