1  KEVIN A. DARBY, ESQ. (NV SB#7670)
   TRICIA M. DARBY, ESQ. (NV SB#7956)
2  DARBY LAW PRACTICE, LTD.
3  4777 Caughlin Parkway
   Reno, Nevada 89519
4  Telephone: (775) 322-1237
   Facsimile: (775) 996-7290
5  E-mail: kad@darbylawpractice.com
6      tricia@darbylawpractice.com

7  Attorneys for Debtor

8                  UNITED STATES BANKRUPTCY COURT
9                       DISTRICT OF NEVADA

10  In re:                              CASE NO.:     BK-N-17-50081-BTB
                                        Chapter 13
11  PATRICIA G. OLSON,

12          Debtor.                     **DECLARATION OF MICHAEL G.
                                        MILLWARD, ESQ. IN SUPPORT OF
13                                      MOTION TO SELL ASSETS FREE AND
                                        CLEAR OF LIENS PURSUANT TO 11
14                                      U.S.C. §363**

15                                      Hearing Date:  May 18, 2017
16                                      Hearing Time: 3:00 p.m.

17  _____/

18      Michael G. Millward, Esq., under penalty of perjury, states as follows:

19      1.    I am an attorney licensed to practice law in the State of Nevada.

20      2.    On February 4, 2016, I was engaged to by Patricia G. Olson to assist her in the revocation

21  of a power of attorney that she had given to her son Patrick Olson.  On February 10, 2017, I was

22  engaged by Mrs. Olson to assist with estate planning matters and to review documents pertaining to an

23  agreement that she had entered into with Cody Bass.

24      3.    I soon discovered that on February 4, 2016, the date Mrs. Olson had requested that I draft

25  a revocation of the Power of Attorney, she on behalf of Olson Bijou Center, L.P., had signed a certain

26  Option Agreement with Cody Bass, to wit Mr. Bass acquired an option to purchase 949 Bal Bijou Road

27  and 3443 Lake Tahoe Blvd. for a total purchase price of $4,200,000 through March 3, 2016 (the "Bass

28  Option Agreement").  I was first provided with a copy of the Bass Option Agreement on February 10,

2016.

4.      After a review of the Bass Option Agreement, I became suspicious of Mr. Bass's relationship with Mrs. Olson and became concerned that Mrs. Olson had signed an agreement without legal or tax advice and without fully realizing the consequences of the agreement.

5.      I was also concerned that Mrs. Olson would suffer a significant tax burden if sale of the building were completed under the terms set forth in the Bass Option Agreement.

6.      On March 2, 2016, the day before the Bass Option Agreement was set to expire; I received an email from Mr. Andrew R. Cohen, Esq., as legal counsel for Mr. Bass, seeking an extension of the Bass Option Agreement deadline to April 4, 2016.   Attached to that email was a proposed First Amendment to Bass Option Agreement ("Proposed First Amendment").   Mr. Cohen's draft of the Proposed First Amendment is attached as Exhibit 1 hereto.

7.      On March 3, 2016, the day the Bass Option Agreement expired, I spoke on telephone to Mr. Cohen about his draft of the Proposed First Amendment.  I informed Mr. Cohen that terms of the agreement were not acceptable and would, at best, need to be revised.

8.      Immediately after I spoke to Mr. Cohen on March 3, 2016, I called Mrs. Olson and discussed with her the proposed extension agreement asked her not to sign the agreement without talking to me first.

9.      At 4:20 p.m. in the afternoon I emailed Mr. Cohen my revisions to the Proposed First Amendment.  Then at 5:01 p.m., I received an email from Mr. Cohen asking that I give him a call.   I promptly called Mr. Cohen at his direct number and discussed the changes requested in my revision of the agreement.   At the end of a lengthy back and forth, Mr. Cohen informed me that Mrs. Olson signed the Proposed First Amendment.

10.      After Mr. Cohen's revelation that Mr. Bass had visited Mrs. Olson at her assisted living facility, and that he had her sign the Proposed First Amendment, I pointed out to Mr. Cohen that the Proposed First Amendment included an error under paragraph 1 "The Agreement." That paragraph of the agreement refers to a "Production Share Agreement" which is not part of the transaction.   Mr. Cohen acknowledged that it was an error, but indicated that it would not affect the validity of the agreement.

11.    I believe Mr. Bass took unfair advantage of Mrs. Olson and manipulated her into signing something without knowing or understanding the contents.    I also believe he improperly circumvented the dealings and protections of legal counsel to victimize and take advantage of Mrs. Olson.

12.    Pursuant to section 4 of the Bass Option Agreement, Mr. Bass's unexercised right to purchase the properties *expired at midnight on March 3, 2016*.

13.    Upon receiving the purportedly executed Proposed First Amendment to the Bass Option Agreement, I immediately noticed that it was not fully executed and, therefore, void.  Specifically, the document is only signed by Mrs. Patrica G. Olson in her individual capacity and not signed by her on behalf of Olson Bijou Center L.P., the then owner of 3443 Lake Tahoe Blvd. and a party to the original Bass Option Agreement.    Additionally, there was no consideration paid for the extension, also rendering it unenforceable.    A purported copy of the void and unenforceable Proposed First Amendment to the Bass Purchase Option for which Mr. Bass is seeking to enforce is attached hereto as Exhibit 2.

14.    Notably, in the version of the purportedly executed Proposed First Amendment sought to be enforced by Mr. Bass attached hereto as Exhibit 2, the error that I pointed out to Mr. Cohen on March 3 2017, (referring to the "Production Share Agreement" as exists in Exhibit 1 does not exist.

15.    Accordingly, I believe that the first page of purported executed Proposed First Amendment for which Mr. Bass is now seeking to enforce has been manipulated and is not the first page of the document that Mr. Bass presented to Mrs. Olson for signing on March 3, 2016.

16.    On April 1, 2016, Mr. Cohen, on behalf of Mr. Bass, sent me correspondence purporting to exercise the Bass Purchase Option based on a the void and unenforceable Proposed First Amendment.

17.    On April 5, 2016, I sent a letter to Mr. Cohen, a copy of which his attached hereto as Exhibit 3.  In that letter I objected to Mr. Bass's tactics of circumventing me, as Mrs. Olson's legal counsel, to manipulate Mrs. Olson into signing the Proposed First Amendment.  I further explained that Mrs. Olson did not understand what, if anything, she signed.  I reiterated that Mr. Bass's option had expired on March 3, 2016, and that the purported executed Proposed First Amendment extending that deadline was never fully executed, lacked consideration, was the result of improper influence and

pressure on an elderly person, and was not enforceable.

18.    On May 12, 2016, Mr. Bass filed a lawsuit against Olson Bijou Center, L.P., Patricia G. Olson, and Patrick Olson for breach of contract, specific performance, breach of covenant of good faith and fair dealing, and intentional interference with contractual relations.

19.    On September 20, 2016, Olson Bijou Center, L.P., Patricia G. Olson, and Patrick Olson filed counterclaims against Cody Bass for elder abuse, intentional interference with contractual relations, fraud and exemplary damages.

20.    The State Court case was still pending at the time this Case was filed.

Dated this 11th day of May, 2017.

MICHAEL G. MILLWARD, ESQ.

-4-

**EXHIBIT 1**

**<u>EXHIBIT 1</u>**

<u>FIRST AMENDMENT TO OPTION AGREEMENT</u>

This FIRST AMENDMENT TO OPTION AGREEMENT is effective as of March 2, 2016 (the "Effective Date") by and between Olson Bijou Center, LP, a California limited partnership and Patricia G. Olson (collectively "Optionor") and Cody Lee Bass ("Optionee").

WHEREAS, Optionor and Optionee entered into that certain Option Agreement effective February 4, 2016 (hereinafter the "Agreement");

WHEREAS, the parties hereto desire to modify the Agreement in the manner hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    <u>The Agreement</u>.   Except as specifically set forth herein in this First Amendment to Production Share Agreement (hereinafter "First Amendment"), the parties hereby ratify and confirm each and every term, representation, warranty, covenant and condition of said Agreement which shall remain in full force and effect; provided, however, that in the event of any conflict between the Agreement and this First Amendment, this First Amendment shall govern and control.  Unless otherwise specifically provided for in this First Amendment, all capitalized terms used throughout this First Amendment shall have the same meaning as such terms are defined in the Agreement.

2.    <u>Term of Option</u>.  Notwithstanding the provisions set forth in Section 4 in the Agreement, the term of the Option shall expire at midnight on April 4, 2016.

3.    <u>Further Assurances.</u> The parties shall execute, acknowledge and deliver such other instruments and take any and all action as may be necessary or appropriate to carry out the full intent and purpose of the Services Agreement, as amended by this First Amendment.

4.    <u>Entire Agreement</u>.  This First Amendment and the terms of the Agreement not otherwise amended herewith, constitute and contain the entire agreement of the parties with respect to the Agreement and supersede any and all other prior negotiations, correspondence, understandings and agreements respecting such matter.

5.    <u>Severability</u>.   If any provision of this First Amendment shall be invalid or unenforceable for any reason and to any extent, the remainder of the First Amendment shall not be affected thereby, but rather shall be enforced to the fullest extent permitted by law.

6.    <u>Counterparts, Electronic and Facsimile Delivery</u>.  This First Amendment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the First Amendment when a duly authorized representative of each party has signed a counterpart.  The parties intend to sign and deliver this First Amendment by electronic or facsimile transmission.  Each party agrees that the delivery of the First Amendment by electronic or facsimile transmission shall have the same force and effect as delivery of original signatures and that each party may use such electronic or facsimile signatures as evidence of the execution and delivery of the First Amendment by all

parties to the same extent that an original signature could be used and the parties hereby waive any defenses to the enforcement of the terms of this First Amendment based upon the form of the signature.

      7.    <u>Parties of Interest</u>.  Each party represents that this First Amendment is executed by its duly authorized representative.  The terms of this First Amendment shall be binding upon, and inure to the benefit of, the parties to this First Amendment and their successors and assigns.

      8.    <u>Time of the Essence</u>.  Time is of the essence with respect to all provisions of this First Amendment that specify a time for performance of any obligations of the parties hereunder.

      IN WITNESS WHEREOF, the parties have executed this First Amendment to Option Agreement effective as of the date set forth above.

Optionor

Olson Bijou Center, LP,
a California limited partnership


By:_____
      Patricia G. Olson
Its:   General Partner



_____

Patricia G. Olson




Optionee




_____

Cody Lee Bass

**EXHIBIT 2**

**<u>EXHIBIT 2</u>**

## FIRST AMENDMENT TO OPTION AGREEMENT

This FIRST AMENDMENT TO OPTION AGREEMENT is effective as of March 2, 2016 (the "Effective Date") by and between Olson Bijou Center, LP, a California limited partnership and Patricia G. Olson (collectively "Optionor") and Cody Lee Bass ("Optionee").

WHEREAS, Optionor and Optionee entered into that certain Option Agreement effective February 4, 2016 (hereinafter the "Agreement");

WHEREAS, the parties hereto desire to modify the Agreement in the manner hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.     The Agreement.  Except as specifically set forth herein in this First Amendment to Option Agreement (hereinafter "First Amendment"), the parties hereby ratify and confirm each and every term, representation, warranty, covenant and condition of said Agreement which shall remain in full force and effect; provided, however, that in the event of any conflict between the Agreement and this First Amendment, this First Amendment shall govern and control.  Unless otherwise specifically provided for in this First Amendment, all capitalized terms used throughout this First Amendment shall have the same meaning as such terms are defined in the Agreement.

2.     Term of Option.  Notwithstanding the provisions set forth in Section 4 in the Agreement, the term of the Option shall expire at midnight on April 4, 2016.

3.     Further Assurances.  The parties shall execute, acknowledge and deliver such other instruments and take any and all action as may be necessary or appropriate to carry out the full intent and purpose of the Services Agreement, as amended by this First Amendment.

4.     Entire Agreement.  This First Amendment and the terms of the Agreement not otherwise amended herewith, constitute and contain the entire agreement of the parties with respect to the Agreement and supersede any and all other prior negotiations, correspondence, understandings and agreements respecting such matter.

5.     Severability.   If any provision of this First Amendment shall be invalid or unenforceable for any reason and to any extent, the remainder of the First Amendment shall not be affected thereby, but rather shall be enforced to the fullest extent permitted by law.

6.     Counterparts, Electronic and Facsimile Delivery.  This First Amendment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the First Amendment when a duly authorized representative of each party has signed a counterpart.  The parties intend to sign and deliver this First Amendment by electronic or facsimile transmission.  Each party agrees that the delivery of the First Amendment by electronic or facsimile transmission shall have the same force and effect as delivery of original signatures and that each party may use such electronic or facsimile signatures as evidence of the execution and delivery of the First Amendment by all parties to the

{S:/BASSCO/0001/AGR/01129354.DOC}                    1

same extent that an original signature could be used and the parties hereby waive any defenses to the enforcement of the terms of this First Amendment based upon the form of the signature.

7.    Parties of Interest.    Each party represents that this First Amendment is executed by its duly authorized representative.  The terms of this First Amendment shall be binding upon, and inure to the benefit of, the parties to this First Amendment and their successors and assigns.

8.    Time of the Essence.    Time is of the essence with respect to all provisions of this First Amendment that specify a time for performance of any obligations of the parties hereunder.

IN WITNESS WHEREOF, the parties have executed this First Amendment to Option Agreement effective as of the date set forth above.

Optionor

Olson Bijou Center, LP,
a California limited partnership

By: _____
        Patricia G. Olson
Its:    General Partner

_____
Patricia G. Olson

Optionee

_____
Cody Lee Bass

Witness

_____
Shaleen Dastur

{S:/BASSCO/0001/AGR/0129354.DOC}                    2

**EXHIBIT 3**

**EXHIBIT 3**



**Cassandra G. Jones, Esq.**
LICENSED IN NEVADA & CALIFORNIA

# HERITAGE
## LAW GROUP, P.C.

**Michael G. Millward, Esq.**
LICENSED IN NEVADA & IDAHO

April 5, 2016

Mr. Andrew R. Cohen, Esq.
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
199 Fremont Street, 21st Floor
San Francisco, CA 94105

      RE:            OPTION AGREEMENT

Dear Mr. Cohen:

      I am in receipt of your April 1, 2016, email on behalf of your client (Mr. Bass) purporting to exercise an option to purchase the Bijou Center. I am writing to let you know that the option to purchase under said agreement expired on March 3, 2016.

      As you may recall, you sent me an email on March 2, 2016, informing me that you had taken the liberty to draft the First Amendment to the Option Agreement (First Amendment) which thereby extended the term of the Option Agreement until April 4, 2016. Then on March 3, 2016, you called me at my office. During that call we had a discussion concerning extending the Option Agreement and I expressed to you my client's concern regarding the tax consequences of the purchase terms. I told you that I would be redrafting the First Amendment to terms that were acceptable to my client.

      Thereafter, I immediately called my client and I was informed that Mr. Bass was then at her residence. I advised my client not to sign the agreement as drafted. I then proceeded to edit the draft of the First Amendment. I emailed you my revision to the draft of the First Amendment at 4:20 p.m. Contained within my revision of the First Amendment were provisions which reduced the payment to the purchase terms to cash. At 5:01 p.m., I received an email from you asking me to call you at your direct number. I promptly called and we discussed the changes provided in my revision to the First Amendment. After a lengthy back and forth as to rationale behind reducing the purchase terms to cash, you informed me that your client had reported that my client signed the First Amendment to the Option Agreement.

      I gather from the information you provided that your client encouraged and/or manipulated my client into signing the First Amendment to the Option Agreement over my objection and advice. I have no other explanation when my client signed the First Amendment against the advice of counsel and while she knew that I was in the process of negotiating terms of the agreement. Let me remind you that my client is a 91 year old woman with poor eyesight. I don't believe my client understood what she was signing. Under the circumstances, the First Amendment was void at execution.

      I am informed by Ms. Olson's accountant that, under the best case scenario with minimal recapture of depreciation, the tax consequences of the proposed transaction that will be due under the purchase terms upon the close of escrow, not including taxes owed upon receipt of future installment payments, will be $205,000.00. Accordingly, if that number is correct, my client would need a payment at the close of escrow of no less than $1,100,000.00 in cash to satisfy security interests and pay the tax generated at the close of escrow. Because the tax



**1625 HIGHWAY 88, SUITE 304, MINDEN, NV 89423   ·   775-782-0040   ·   WWW.HERITAGENEVADA.COM**

ramifications of this transaction were unknown at the time, I informed you that my client could not sign the First Amendment to the Option Agreement that you proposed and submitted to me via email March 2, 2016.

On April 1, 2016, following receipt of the notice exercising your client's purported option, upon my request you provided a copy of an executed draft of the First Amendment. The copy provided appears to be your draft of the First Amendment and does not reflect my requested changes. Additionally, the First Amendment was only signed by Patricia individually and not as a General Partner of the Olson Bijou Center, LP. The document was not fully executed.

Even though the First Amendment acknowledges consideration, I am unaware of any consideration given which was received by my client for providing Mr. Bass with an extension to exercise the option to purchase.

Accordingly, no enforceable option agreement existed as of March 4, 2016. I must say I was surprised that you and your client made no effort to rectify the invalid First Amendment knowing the circumstances that it was signed. With that being said, your client is free to make an offer to purchase the property with terms that include an initial cash installment or down payment in excess of $1,100,000.

I look forward to hearing from you.

Best Regards,

Michael G. Millward, Esq.